In re ROHKRAMER'S ESTATE. CONLON, Public Administrator, Appellant, *v.* MERTZ, Respondent.

(No. 8,325.)

(Submitted September 15, 1942. Decided October 5, 1942.)

[131 Pac. (2d) 967.]

*Mr. H. R. Boden* and *Mr. Fred W. Schilling,* for Appellant, submitted an original and a reply brief; *Mr. Schilling* argued the cause orally.

*Messrs. Mulroney & Mulroney,* for Respondent, submitted a brief; *Mr. E. C. Mulroney* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an appeal from an order granting letters of administration to Gustav H. Mertz and refusing to grant letters of administration to Anna Conlon, the public administrator.

The deceased, Pauline Rohkramer, died intestate at Missoula on the 3rd day of November, 1941. Prior to her death, having no relatives in this country and being of an advanced age, she asked the Reverend Gustav H. Mertz, a friend, to be her administrator. She was advised by Mertz and his attorney that she should make a will. ·However, she did not want a will and went no further than to execute the following instrument:

"To Whom It May Concern:

"In case anything happens to me, I, Pauline Rohkramer, of Missoula, Montana, appoint Rev. Gustav H. Mertz, Missoula, Montana, to be my administrator to settle my estate.

"Signed this 6th, sixth, day of November, in the year of our Lord nineteen hundred and thirty nine (1939).

"Pauline Rohkramer Seal."

The controversy before this court concerns the petitions for letters of administration of Mertz and Anna Conlon, the public administrator. Both claim the right to be the administrator. Mertz bases his claim upon the fact that Pauline Rohkramer requested his appointment, and Anna Conlon claims by virtue of her being the public administrator. The district court found in favor of Mertz and granted letters of administration to him.

The public administrator has appealed and her main contention upon the merits is that the district court acted contrary to the statute governing the appointment of administraotrs of estates of persons dying intestate. That section is 10068, Revised Codes, and is as follows:

"Administration of estate of all persons dying intestate must be granted to some one or more of the persons hereinafter mentioned, the relatives of the deceased being entitled to

administer only when they are entitled to succeed to his personal estate, or some portion thereof, and they are, respectively, entitled therein in the following order:

"1. The surviving husband or wife, or some competent person whom he or she may request to have appointed.

"2. The children.

"3. The father or mother.

"4. The brothers.

"5. The sisters.

"6. The grandchildren.

"7. The next of kin entitled to share in the distribution of the estate.

"8. The public administrator.

"9. A creditor.

"10. Any person legally competent.

"If the decedent was a member of a partnership at the time of his decease, the surviving partner must in no case be appointed administrator of the estate."

The public administrator argues that Mertz qualifies under subsection 10 of the statute, and that she, as public administrator, qualifies under subsection 8, which gives her preference to the letters of administration. It is admitted that Mertz, without the aid of the instrument requesting him to be administrator, would have to show authority for his appointment under category 10.

The precise question before us is the effect of the nomination of an administrator by a person dying intestate. There have been no cases cited to us wherein this question has been litigated, and we are unable to find any. We must, therefore, construe the language and intent of our statutes without the aid of prior decisions.

The statute provides the exclusive method for the selection of an administrator. (Sec. 10068, Rev. Codes.) The language is plain and unambiguous. It specifies the classes from which the selection must be made and their order of preference. The statute does not provide for nor contemplate the nominee of

an intestate as one of those classes. Were this court to affirm the district court, we would in effect write into the statute a category which was not within the contemplation of the legislature, and at the same time decide what priority to give it. We cannot do this. The enlargement of the scope of this section is exclusively within the realm of the legislative branch of the government.

The public administrator has also contended that the court erred in acting in the cause after an affidavit of disqualification was filed. In view of what we have said above, this question becomes unnecessary to the decision.

The order is reversed and the cause remanded with direction to issue letters of administration to Anna Conlon, the public administrator.

Mr. Chief Justice Johnson and Associate Justices Erickson and Morris concur.

Mr. Justice Angstman takes no part in the foregoing decision.

## ON MOTION FOR REHEARING

(Filed December 19, 1942.)

MR. JUSTICE ANDERSON delivered the opinion of the court.

The appellant and respondent have both petitioned for rehearing, both seeking expression from the court on a point not discussed in the opinion rendered. The question raised thereby is as to the effect of the affidavit filed by the public administrator seeking to disqualify the trial judge.

The opinion shows who is entitled to letters, the only controversy as to which disqualification was attempted. That being disposed of by the judgment of this court, it is for the judge presiding, whether it be Judge Besancon or some other as may be arranged in the handling of the business of the court, to proceed with the further administration of the estate. It seemed, therefore, unnecessary to discuss the question of disqualification. It is now urged, however, that it is of im-

portance nevertheless as bearing upon the question of the status of the estate resulting from administrative acts done by Mertz after his appointment and up to the time of the decision here rendered.

The question of validity of administrative acts was not directly before the court as the case was presented by the appeal; it was not shown that Mertz had entered upon administration of the estate; the record on appeal took us up to the grant of letters of administration and no further. What transpired thereafter would seem to be new matter, in the progress and development of which, if controversy arose, such controversial matter would be the subject of new litigation not to be anticipated and disposed of in the present appeal.

However, it was contended that, because of disqualification, the judge was without authority to act when the appointment was made, leaving the appointment utterly void because of want of jurisdiction. And now, both parties desiring that on rehearing the effect of the appointment in relation to the administration of the estate be determined, we think it may properly be considered as arising under the contention originally made in respect to the appointment.

The disqualification attempted was for bias and prejudice, under subdivision 4 of section 8868, Revised Codes. That requires that an affidavit charging the bias and prejudice be filed at least five days before the day fixed for the hearing or trial.

The matter before the court was the granting of letters of administration. The two opposing parties sought the letters and it was for the court to determine to whom they should issue. Chapter 77, Laws of 1941, amending section 9990, Revised Codes, provides that the public administrator may not apply for letters of administration until thirty days after death of the decedent, unless the petition show affirmatively that there are no known heirs or none resident in the state, and that there is property of the estate which, if left uncared for, will result in waste and loss to the estate. In the course

of the proceeding this was referred to by the court, saying that under its provisions the public administrator was not legally before the court. Upon the question being so raised, the public administrator immediately withdrew her petition. Two days later she filed a new petition, and four days thereafter she filed her affidavit imputing bias and prejudice on the part of the judge.

Appellant now contends that upon filing her affidavit of prejudice, the judge was thereby instantly disqualified and was without jurisdiction to proceed further; that the order appointing Mertz, being made after disqualification, was null and void; that Mertz never became administrator of the estate; and that the administration by the public administrator must be from the beginning of administration of the estate without any reference to anything done by Mertz therein assuming to act as administrator.

Respondent contends that the disqualifying affidavit being filed after hearing commenced on the Mertz petition was without any effect therein; that it was effective only upon the hearing of the second Conlon petition, as to which it was filed in time and as to which it alone referred; that the result thereof was to divorce the judge from all relation to the Conlon petition, but as to the Mertz petition he was left free to proceed; that therefore the judge, sitting in hearing on the Mertz petition, must proceed as with no opposition thereto, and that if anything shall come from the Conlon petition to disturb the appointment of Mertz, it must be as result of a hearing before a judge other than the one who has been disqualified.

The difficulty in solving the question of disqualification is in determining the status of the public administrator in the proceeding as it progressed, and the status of the proceeding at the time the disqualifying affidavit was filed.

The decedent, Pauline Rohkramer, died on November 3rd. Mertz applied for letters on November 7th. Under Chapter 77, Laws of 1941, already referred to, the public administrator was not permitted to apply for letters until thirty days after

the death of the decedent, which would be December 3rd, unless her petition showed the special circumstances and condition of the estate such as permitted earlier application. Here the public administrator filed her petition for letters on November 12th, only nine days after death of decedent. Hearing on each of the two petitions was set for the same date, November 21st. The matter was continued until November 28th, when hearing together on the two applications was actually commenced, both parties and their respective counsel all present and participating. No disqualifying affidavit had then been filed, nor was any question raised as to the right of Anna Conlon to then appear because of the restrictions under Chapter 77, Laws of 1941. The hearing proceeded without objection of any kind by either party. No proof was taken on that day, the court saying there seemed to be no dispute as to the facts— only a question of law arising. Counsel were required to file law briefs and the hearing was continued.

On December 6th, which was after the thirty-day period referred to in Chapter 77, the two applicants entered into an agreed statement of facts covering the case. Hearing was resumed on December 20th, with Anna Conlon and counsel for both applicants present. The agreed statement of facts, which had been filed on December 6th, was first considered. It was found to cover all the facts necessary to make a case for grant of letters, as well as the facts relied upon by each party as giving the superior right over the other to appointment as administrator. There was question as to the amount of the administrator's bond to be required, and evidence was taken on property and rental values to furnish the basis for its determination. Several witnesses testified and the character and value of the property were gone into in detail. It was brought out that the public administrator had taken possession of all of the property of the estate. Her counsel testified, giving detailed description of the various items of property and his opinion as to values. The case so made was then submitted to the court with argument of opposing counsel.

After the noon recess, hearing being resumed, counsel for Anna Conlon asked leave to re-open the case and offer proof on the question of the competency of Mertz for appointment. After some colloquy by the court and counsel, the court raised the question of the right of Anna Conlon to be in the case, her petition having been filed only nine days after the death of decedent, and not showing the special circumstances under which the thirty-day restriction would not apply. Her counsel immediately withdrew her petition upon the question being raised, but announced that another petition would be filed. After withdrawing the petition he again raised the question of the competency of Mertz, which the court said it would inquire into, and that Anna Conlon's counsel being then out of the case would be permitted to appear in such inquiry as friend of the court. The hearing was continued until December 23rd. On the same day, after adjournment of the court, a petition for letters was filed by a creditor, Dora Weigart, and two days thereafter, on December 22nd, Anna Conlon filed her second petition for letters.

Upon hearing being resumed on December 23rd, there were then three petitions for letters: the petition of Mertz, the petition of Dora Weigart, and the new petition of Anna Conlon. The three applicants, and counsel for Mertz and counsel for Anna Conlon were all present in court. The two new petitions were referred to and considered. Anna Conlon's counsel, Mr. Boden, who represented her in district court, said that the petition of Dora Weigart would be withdrawn. Question was raised as to the propriety of his speaking for Dora Weigart, he representing Anna Conlon. Dora Weigart was questioned upon the matter and examined by court and counsel, with the result that she herself withdrew her petition. The new petition of Anna Conlon was discussed, her counsel saying that they were ready to proceed. When her new petition was filed it had been set down for hearing on January 2, 1942. There was some question whether the hearing should proceed further until that date. The court said that further

consideration might better be deferred until that date, and the hearing was accordingly continued until January 2nd. Three days thereafter, on December 26th, Anna Conlon filed her affidavit charging bias and prejudice on the part of the judge presiding.

On January 2nd, when further hearing came on, the disqualifying affidavit was considered. The judge held that the attempt at disqualification came too late, he having already entered upon the hearing, with evidence upon the merits submitted and considered, as well as argument of counsel—all done before the affidavit was filed. He considered the affidavit as of no effect and proceeded with the case.

There was some discussion then as to whether the agreed statement of facts and evidence adduced and proceedings had before withdrawal by Anna Conlon of her first petition would apply to her second petition. Her counsel made some contention indicating his thought that the hearing then should be without relation to the proceedings that had gone before. The court expressed the view that it was all one matter, that the hearing before was the same as the hearing then before the court. No ruling was asked for on the question and nothing was done about it, the hearing proceeding thereafter as without any question thereon having been raised. The only matter inquired into was the question of the competency of Mertz and the circumstances under which he had obtained the letter from Pauline Rohkramer regarding his appointment as administrator. Anna Conlon offered no proof other than that she was the public administrator, relying entirely upon the proof and the proceedings had before withdrawal of her first petition to establish her right to letters. The case was so submitted and it was thereupon promptly disposed of, the judge announcing from the bench the appointment of Mertz.

There was only one matter before the court in which each of the opposing parties sought to prevail—the grant of letters of administration. There were several applicants for the letters, all coming in while the matter was pending and open.

The statute, section 10077, Revised Codes, provides that all such petitions of contesting applicants must be heard together, making of it one proceeding. Here the trial judge proceeded correctly by continuing the hearing from time to time and permitting other applicants coming in to be made parties to the proceeding, and all such applications to be heard together in opposition. (Woerner on Administration, 3rd Ed., 863, sec. 263.)

The procedure on application for letters of administration ▆ is largely informal. The only paper serving as a pleading is the petition of the applicant, wherein he states his case as if ex parte. If another applicant comes in he does likewise. What gives rise to counter-action in the proceeding is the fact that both are asking for the same thing at the same time. The one petition cannot be considered and determined without regard to the other, and it is therefore that the statute provides that they shall be heard together. There is no requirement that the petitions be specially framed in relation of one to the other. The fact that both have come into court seeking the same thing at the same time, and which can be granted only to one, furnishes the basis of contest. Of necessity much liberality in procedure has developed in actual practice in such cases. Generally they are disposed of without any close question of procedure involved. But when questions do arise, as in the instant case, they are more difficult of solution than in the ordinary action based on formal pleadings.

A petition filed initiates the proceeding. Date of hearing is fixed, notice thereof is given and the matter is then under way toward adjudication. Those interested and desiring to take part in the proceeding should make appearance before hearing commences. That is the purpose of the notice. While anyone with right to apply for letters may thereafter come in at any time before final disposition, it is questionable that such applicant may then disrupt the hearing by disqualifying the ▆ judge. While it is intended that every litigant shall have an impartial hearing, and to that end the right to dis-

qualify is given, the exercise of that right must be timely to preserve the orderly functioning of the court. If error results from such bias and prejudice in a case where timely action is not taken to disqualify the judge, the remedy of the litigant is by appeal from the decision made.

A serious question arises under Chapter 77, Laws of 1941, as to the right of the public administrator to disqualify upon filing a petition for letters after the lapse of thirty days from the death of decedent, where hearing has already commenced on other petitions filed. In the instant case apparently it was the thought of the public administrator that she was in that situation when she filed her disqualifying affidavit. As we view the case, that was not her situation, and furthermore, if any right she did have to disqualify the judge upon the filing of her second petition, the question was wholly eliminated by her conduct of her case thereafter.

At the inception of the proceeding, the right of Anna Conlon to appear was in no way questioned. The hearing proceeded with her participating in full right until the withdrawal of her petition as premature. When that occurred the evidence in the case tended to show her right to letters within the exceptions specified in Chapter 77, supra. Furthermore, the thirty-day period had then elapsed and there was no longer the ban under that chapter. She was before the court asking for letters in a proceeding which had been instituted for the very purpose of determining the grant of letters and to whom they should issue. The only party then to offer any objection would be the other applicant, Mertz. He had never raised any question thereon during the thirty-day period. After the thirty-day period, on December 6th, he entered into an agreed statement of facts which was filed and submitted to the court as stating the case. By this he recognized the right of the public administrator to be then heard on her application for letters and waived all question of the premature filing of her petition; and he thereafter never raised the question. It was raised by the court of its own motion after the case had been

fully submitted. Any question of error in the court's views was removed by the instant withdrawal of the petition.

In two days after her withdrawal and before anything further had transpired in the case, Anna Conlon was again before the court in the same matter and by petition asking for letters on the same ground as in her first petition, the only difference being as to its date and the time of filing, which was after the thirty days. She was received and proceeded in every way as if reinstated in the case. She participated in every step taken in the proceeding after her second petition was filed, as she had before. After continuance from December 23rd to January 2nd, and hearing being resumed, her counsel raised the question of the relation of the proceedings already had to her petition then before the court. But the question was abandoned as being in the case. Had she wanted to maintain her position as being then before the court in a new proceeding separate and distinct from that in which she had theretofore participated, she should then have made her case by offering proof to establish her right to letters. This she did not do. She merely proved that she was the public administrator, as before. All the proceedings in the whole matter from the very beginning up to the time of filing the second Conlon petition, and the proceedings thereafter had up to the final conclusion, were taken by both parties as constituting the case. It was all welded into one and submitted by both parties as produced from a joint hearing, each maintaining a preference right to letters upon the facts as shown.

With the parties so treating the case, it is not for us to take it apart and endeavor to make of it more than one hearing. If that be done the whole case falls apart and it all comes to naught. It is only by seeing this whole matter as one joint proceeding that anything can be made of it. Without such view there is nothing presented to which any legal effect can be given. There is no such intention evidenced by the record. There was but one joint hearing as a matter of fact, such hearing having commenced on November 28th and concluded on

January 2nd. The disqualifying affidavit filed long after the date of hearing set and after hearing actually commenced, came too late and was of no effect. (*State ex rel. Jacobs* v. *District Court*, 48 Mont. 410, 138 Pac. 1091.)

The appointment of Mertz was legal. It was erroneous, for ▮ which there has been reversal on appeal. The appointment was not void, but voidable only. As to the effect of the reversal in relation to administrative acts done under the appointment, section 9744, Revised Codes, provides that "when the judgment or order appointing an executor, or administrator, or guardian is reversed on appeal, for error, and not for want of jurisdiction of the court, all lawful acts in administration upon the estate performed by such executor, or administrator, or guardian, if he have qualified, are as valid as if such judgment or order had been affirmed."

It is shown in the petitions for rehearing that after the appointment made, Mertz qualified and entered upon the administration of the estate, publishing notices to creditors, gave notice to the State Board of Equalization, made and filed an inventory of assets, and did other administrative acts. Whatever proper steps in the administration have been so taken and done must be taken as lawfully performed and valid. The administration under the public administrator will commence at the stage where the administration under Mertz was terminated by the judgment of this court. (23 C. J. 1083, sec. 242; 33 C. J. S., Executors and Administrators, pp. 995-1000, secs. 72 and 73; *In re Esterly's Estate*, 97 Mont. 206, 34 Pac. (2d) 539.)

With this amplification of the opinion as already rendered, the petitions for rehearing are denied.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON and MORRIS concur.

MR. JUSTICE ANGSTMAN, not having taken part in the original opinion, takes no part in this.